James C. Davis, Director-General of Railroads, as Agent under Section 206 of the Transportation Act of 1920, Plaintiff, v. Cayuga Operating Co., Inc., Defendant.*

Third Department, May 21, 1926.

Carriers — carrier of goods — action to recover refund made to defendant — defendant shipped cement during 1919, while carrier was under Federal control, from Portland Point, N. Y., to Rochester, and directed delivery " N. Y. C." or " B. R. & P."— defendant specified, in bill of lading prepared by it, rate of one dollar and eighty cents per ton — said rate applied to two of three routes — rate of one dollar and thirty cents per ton applied to third route — specification of rate of one dollar and eighty cents per ton was equivalent to direction to ship over either route covering that rate — plaintiff was not required to ship over cheaper route or to ask defendant for specific routing.

The plaintiff is entitled to recover from the defendant, a shipper, an amount refunded to defendant on a shipment of cement, made during the year 1919, while the carrier was under Federal control, from Portland Point, N. Y., to Rochester, under a bill of lading directing delivery " N. Y. C." or " B. R. & P.," Rochester, N. Y., which bill of lading, prepared by the defendant, specified the rate to be one dollar and eighty cents per ton, since it appears that there were three possible routes between the point of shipment and the place of delivery at Rochester, and that two of the routes carried a rate of one dollar and eighty cents per ton and the third route the rate of one dollar and thirty cents per ton, for the specification by the defendant of the rate of one dollar and eighty cents per ton was a direction to the plaintiff to ship over either route carrying that rate. A ruling of the Interstate Commerce Commission providing that in the absence of a specific routing by a shipper the carrier must ship over the cheapest route, does not apply.

The specification of the rate in the bill of lading clearly indicated a direction to ship over either of the two routes carrying a rate of one dollar and eighty cents per ton, and the plaintiff was not required to ask for specific routing instructions as it would have been required to do if the rate and the route were inconsistent.

H. T. Kellogg, J., dissents, with opinion.

Submission of a controversy upon an agreed statement of facts pursuant to section 546 of the Civil Practice Act.

*Cobb & Cobb* [*Harold E. Simpson* of counsel], for the plaintiff.

*Hughes, Rounds, Schurman & Dwight* [*Charles V. Parsell* and *Jacob Gould Schurman, Jr.,* of counsel], for the defendant.

* By Proclamations of President (44 U. S. Stat. at Large, ——), under date of December 14, 1925, effective at midnight on December 31, 1925, Andrew W. Mellon was designated and appointed as Director-General of Railroads and as Agent under section 206 of the Transportation Act of 1920 (41 U. S. Stat. at Large, 461, chap. 91, as amd. by 42 id. 393, chap. 70, and 42 id. 1443, chap. 233) in place of James C. Davis, resigned.— [Rep.

McCANN, J.   The plaintiff brings this action to recover certain moneys paid to the defendant through an error.   Between April 15, 1919, and October 22, 1919, defendant shipped seventy-five carloads of cement from Portland Point, N. Y., to Rochester, N. Y., consigned to different consignees at Rochester.   Bills of lading were prepared by the defendant in respect to each such shipment and were delivered to the plaintiff's agent in Ithaca, N. Y., who signed them and issued them.   These bills were made in the usual form.   They did not designate any single specific route over which the shipment was to be made.   In the space provided for such designation appear the words " N. Y. C. delivery " or " B. R. & P. delivery," as the case might have been. These words were to indicate the railroad switch or side track in Rochester on which deliveries should be made and were not for the purpose of designating such railroad as the route over which the shipment was to be made from Portland Point to Rochester. In the body of each bill of lading appeared the words " freight $1.80 ton."   Between the dates above mentioned there were three routes between Portland Point and Rochester over any one of which the cement might have been transported.   Route 1 was a direct one over the lines of the Lehigh Valley railroad to Rochester.   The freight rate legally established in respect to cement shipped over this route was one dollar and thirty cents per ton, which included delivery to switch or side track of either the New York Central or the Buffalo, Rochester and Pittsburg.   Route 2 was over the lines of the Lehigh Valley to Weedsport, N. Y., and thence over the lines of the New York Central to Rochester, the legally established rate being one dollar and eighty cents per ton for which the cement would be delivered as indicated under route 1.   Route 3 was over lines of the Lehigh Valley to Pittsburg and Lehigh Junction, thence over the lines of the Buffalo, Rochester and Pittsburg railroad to Rochester. The freight rate legally established in such case was also one dollar and eighty cents a ton delivered on side track or switch as above indicated.   The schedules of the tariff rates were filed with the Interstate Commerce Commission, also with the Public Service Commission of the State of New York and the freight agent of the Lehigh Valley railroad as required by law.   All of the seventy-five carloads of cement involved in this controversy were moved over either the second or the third routes above described and to each of which routes the rate of one dollar and eighty cents applied. The consignors paid the plaintiff the rate of one dollar and eighty cents for such shipment plus war tax.   Thereafter the defendant filed with the plaintiff a claim for a refund of fifty cents per ton

on all cement shipped, on the ground that such cement had been misrouted by plaintiff. Such refund was made amounting to $1,625.08. The plaintiff now seeks to recover said refund on the theory that there was a valid contract by which the plaintiff agreed to carry the seventy-five cars of cement at a rate of one dollar and eighty cents per ton and that under the laws of the State of New York and of the United States the plaintiff is entitled to the full rate and can recover back the amount erroneously paid to the defendant. The defendant contends that there was no designation of any route in any of the bills of lading involved and that plaintiff misrouted the carloads of cement by failing to send them over the cheapest available route and that the defendant is, therefore, entitled to retain the sum of money which was refunded to it by the plaintiff. The controversy has been submitted as provided by sections 546–548 of the Civil Practice Act.

The bill of lading signed by the parties constituted a contract between them. (*Long* v. *N. Y. Central R. R. Co.*, 50 N. Y. 76; *Hoffman* v. *Metropolitan Express Co.*, 111 App. Div. 407.)

The Federal government (through section 6, subdivision 7, of the Interstate Commerce Act)* and the State of New York (through the Public Service Commission Law [Laws of 1910, chap. 480], § 33, subd. 1) have provided for the collection of full tariff rates by any carrier in interstate and intrastate commerce respectively, and such acts furthermore prohibit the refund of any part of any such rates. For the purpose of carrying into effect and enforcing the operation of the statutes, the Interstate Commerce Act and the Public Service Commission Law, respectively, authorized the adoption of rules by their respective Commissions.† The Interstate Commerce Commission has provided as follows:

Conference Ruling 214 (*c*): " In the absence of specific through routing by shipper, which carrier is willing to observe, it is the duty of the agent of the carrier to route shipment via the cheapest reasonable route known to him."

Conference Ruling 474 (*c*): " When, therefore, the rate and the route are both given by the shipper in the shipping instructions and

---

\* See Interstate Commerce Act (24 U. S. Stat. at Large, 380), § 6, subd. 7, as amd. by Hepburn Act (34 id. 586, 587), § 2, and Transportation Act of 1920 (41 id. 483), §§ 409, 411. See, also, Elkins Act (32 id. 847, chap. 708), § 1, as amd. by Hepburn Act (34 id. 587), § 2; Barnes Federal Code Supp. § 7890, subd. 7; Barnes Federal Code, § 7921.— [REP.

† See 24 U. S. Stat. at Large, 380, § 6, subd. 3, as amd. by 34 id. 586, § 2, and 41 id. 483, §§ 409, 410; 24 id. 385, 386, § 17, subd. 1, as amd. by 40 id. 270, chap. 50, § 2, and 41 id. 492, § 430; Barnes Federal Code Supp. § 7890, subd. 3; Id. § 7907, subd. 1; Laws of 1910, chap. 480, §§ 20, 28, as amd. by Laws of 1921, chap. 134; Id. § 41, as added by Laws of 1917, chap. 805.— [REP.

the rate given does not apply via the route designated it is the duty of the carrier's agent to ascertain from the shipper whether the rate or the route given in the shipping instructions shall be followed. The carrier will be held responsible for any damages which may result from the failure of its agent to follow this course." *

These rulings have the effect of law in the regulation of shipments of goods by interstate commerce. It is immaterial that similar provisions do not seem to have been adopted by the Public Service Commission for intrastate shipments, in view of the fact that the shipments in question were made during the period of Federal control of railroads (Federal Control Act [40 U. S. Stat. at Large, 456], § 10), and that both parties hereto argue that such Federal rulings controlled the shipments in question.

The plaintiff claims that the bills of lading were sufficiently specific to notify it as to the route of shipment. The bill of lading did not name any one route but inasmuch as there were three routes it is claimed that in designating " freight $1.80 ton " the shipper intended that the plaintiff should select either one of the two routes from Portland Point to Rochester and that it was in effect a specific notice not to ship by the cheaper route over the lines of the plaintiff. Plaintiff also claims that Conference Ruling 474 (*c*) does not apply because that is applicable only in cases where " rate " and " route " are inserted and do not coincide, in which case the carrier should consult with the shipper before forwarding the shipment. Such provision necessarily implies that if either is given, it should control, if sufficiently specific, but it is only in the case of inconsistency that it is necessary to comply with such ruling. Defendant claims that the bills of lading are silent as to the route and that no specification of route can be inferred by the use of the words " freight $1.80 ton." If the latter phraseology constituted a specific routing by the shipper, it must be conceded that the contract is as claimed by plaintiff, but if it was silent on this point, as claimed by defendant, the law implied a direction to ship by the cheapest route. It is clear that the bill of lading contemplated shipment by either one of the two routes having rates at one dollar and eighty cents per ton. Why the shipper should have chosen the higher rate and left the choice of the two routes to the plaintiff we cannot say. Many reasons may have existed, such as the question of poor service by the plaintiff in the past, delay in transportation, rough handling of cars, or personal reasons for or against either one of the three carriers or their officers. In any event, there is a plain direction upon the bill of lading for a

---

* See I. C. C. Conference Rulings, pp. 61, 131, rulings 214*c*, 474*c*; *American Hominy Co.* v. *Director-General* (74 I. C. C. 204, 205).— [Rep.

shipment over some route where the one dollar and eighty-cent rate has been legally established.

Furthermore, our conclusion is in accord with the interpretation of the Interstate Commerce Commission of its own ruling. In *Block-Pollak Iron Co.* v. *Houston East & West Texas R. Co.* (19 I. C. C. 505) it was held that where the bill of lading includes a rate it is the duty of the shipper to ship over the route over which that rate applies. This rule was also followed in a matter arising between the same parties to this controversy in *Cayuga Operating Co., Inc.,* v. *Director-General* (74 I. C. C. 676), from which the following is quoted: " In the bill of lading tendered with the Rochester shipment complainant specified New York Central delivery and inserted ' Freight $1.80 per ton ' in the body of the bill of lading but not in the space provided for specifying the rate. Defendant moved the shipment over the Lehigh Valley to Weedsport, N. Y., and the New York Central to Rochester and assessed the joint rate of 9 cents, equivalent to $1.80 per net ton, applicable by that route. Contemporaneously an individual rate of 6.5 cents, equivalent to $1.30 per net ton, with provision for the absorption of the New York Central's switching charges at Rochester, applied over the direct route of the Lehigh Valley. Complainant contends that the charges collected were unreasonable and unlawful to the extent that they exceeded charges that would have accrued if the shipment had moved over the Lehigh Valley direct to Rochester and had there been delivered over the New York Central. The insertion of a rate in the bill of lading by the shipper was equivalent to instructing the defendant to forward the shipment by the route over which that rate applied, such routing not being inconsistent with the instructions for New York Central delivery. The shipment was not misrouted. The facts as to all of the shipments, other than these hereinbefore specifically excepted, are substantially similar. In each instance the shipment was forwarded by the route over which the rate specified in the bill of lading applied and delivery was made over the rails of the carrier named therein."

The defendant claims that no weight should be given to the *Cayuga* case because it was submitted " without oral argument and an examination of complainant's brief therein shows that attention was not directed to the important fact that between Portland Point and Rochester there were three routes, over two of which the $1.80 rate applied." Assuming that these facts are true it does not change our views in the case before us.

Other questions are raised upon the briefs but inasmuch as we have reached the above conclusion, it is unnecessary to discuss them.

Plaintiff should have judgment in the sum of $1,625.08, with interest from July 6, 1920, without costs.

All concur, except H. T. KELLOGG, J., dissenting, with an opinion.

H. T. KELLOGG, J. (dissenting). The Interstate Commerce Commission, by Conference Ruling 214 (*c*), provided as follows: " In the absence of specific through routing by shipper, which carrier is willing to observe, it is the duty of the agent of the carrier to route shipment via the cheapest reasonable route known to him." In this case there were three routes over which the agent might have shipped. Over two of these routes the freight rate was one dollar and eighty cents per ton; over one of the routes the rate was one dollar and thirty cents per ton. It is claimed that because the shipper inserted in the bill of lading the words " freight $1.80 ton " it indicated its preference for one of the two routes as to which the higher rate prevailed. It does not seem to me that this was " specific * * * routing." To " specify " is " to mention or name, as a particular thing; to designate in words so as to distinguish from other things." (Webster's Internat. Dict.) Certainly the shipper did not " mention " or " name " the " particular " route over which it desired shipment. It may have used words from which it might be inferred that it preferred one of the two routes having a one dollar and eighty-cent rate. However, since the language employed was so indefinite that the meaning could be determined only by drawing an inference, it would seem clear that it had not been " specific " in its use of words. Moreover, even if the inference suggested were permissible the shipper expressed no election as between the two routes inferentially designated. Of the two one dollar and eighty-cent routes he did not " designate in words " one route " so as to distinguish " it from the other. The shipper, therefore, neither had in mind a " specific " routing nor used words of a definite character to specify the route determined upon. The agent, therefore, should have shipped over the one dollar and thirty-cent route. Consequently there should be no recovery of the moneys returned.

Judgment directed in favor of the plaintiff for the sum of $1,625.08, with interest from July 6, 1920, without costs.